COOPER v. CHAPMAN.

5-908                                289 S. W. 2d 686

Opinion delivered April 30, 1956.

*E. J. Butler,* for appellant.

*Mann & McCulloch,* for appellee.

SAM ROBINSON, Associate Justice. While a guest in an automobile owned and operated by the appellant, R. O. Cooper, the appellee, Nettie M. Chapman, was seriously injured. She filed suit against Cooper, alleging that he operated the car in a willful and wanton manner which resulted in her injuries. The case was defended on the theory that the defendant Cooper's conduct was not willful and wanton within the meaning of our guest statute. Ark. Stats., §§ 75-913-14-15. There was a judgment for Mrs. Chapman in the sum of $7,500.00, and Cooper has appealed.

After all the evidence was introduced, Cooper moved for a directed verdict on the ground that the evidence was not sufficient to take the case to the jury on the question of whether his operation of the car amounted to willful and wanton misconduct. His motion was overruled.

There were three passengers in the car in addition to Cooper: Mrs. Chapman, Mrs. Leslie and Mrs. Riley. The evidence shows that Cooper had been drinking to some extent; there is actual proof of only two drinks, but he had a bottle of whiskey with him in the car, and while at the hospital after the accident, an officer smelled alcohol on his breath. Mrs. Leslie, who was sitting in the back seat, testified that she looked at the speedometer and the car was traveling 100 miles an hour. Both she and Mrs. Chapman attempted to get Cooper to reduce the speed, but he continued at the high rate of speed until a moment before the wreck. Mrs. Leslie testified that he went off on the shoulder of the road, and then she said: "The last thing I remember we were begging him to slow down." On cross-examination, the witness testi-

fied that Mrs. Chapman complained to Cooper that he was going 100 miles an hour, and begged him to slow down. The witness further testified that both she and Mrs. Chapman repeatedly asked him to slow down, and that she stated to Cooper: "If you are going to drive that fast I would rather you would stop and let me out."

Mrs. Chapman testified that she did not actually look at the speedometer, but she knew he was driving awfully fast. She asked him to slow down. "I told him he was flying too low." On two different occasions, she asked him to slow down; Mrs. Leslie repeatedly asked him to slow down, and when he did finally slacken his speed it was only to the extent of reducing it about 15 miles an hour.

Cooper made the remark: "I didn't know I was going a 100." The car turned over with such terrific force that it knocked Cooper and two of the passengers unconscious; however, although Mrs. Chapman was seriously injured, she was not rendered unconscious. The car turned end over end; it did not collide with anything, Cooper merely lost control by reason of the terrific speed.

Mrs. Riley, another passenger in the car, testified for the defendant, but admitted on cross-examination that she had previously told one of the attorneys for the plaintiff that they were going over 100 miles an hour. Cooper admitted that Mrs. Chapman told him he was "flying too low without wings." He also stated that the car would go over 100 miles an hour, and on another occasion, he had driven it 115 miles an hour.

Under the evidence in this case, the jury could have reached the conclusion that the car was going between 85 and 100 miles an hour at the time of the wreck; that the passengers, particularly Mrs. Leslie and the plaintiff, Mrs. Chapman, had repeatedly requested Mr. Cooper to slow down, but that he had not done so to any appreciable extent. Such terrific speed on the road from Forrest City to Wynne in the night time, over the protests of the passengers, is sufficient ground to base a finding

of willful and wanton misconduct. To sustain his argument that the evidence was not sufficient to send the case to the jury, appellant cites several cases, including *Splawn, Admx.* v. *Wright,* 198 Ark. 197, 128 S. W. 2d 248; *Ward* v. *George,* 195 Ark. 216, 112 S. W. 2d 30; *Froman* v. *J. R. Kelley Stave & Heading Company,* 196 Ark. 808, 120 S. W. 2d 164; *Hodges* v. *Smith,* 175 Ark. 101, 298 S. W. 1023; *Haag* v. *Morgan,* 225 Ark. 664, 284 S. W. 2d 866; *Edwards* v. *Jeffers,* 204 Ark. 400, 162 S. W. 2d 472; *Cooper* v. *Calico,* 214 Ark. 853, 218 S. W. 2d 723, and *Steward, Administrator* v. *Thomas,* 222 Ark. 849, 262 S. W. 2d 901. But all of these cases can be distinguished on the facts. We think the case of *McAllister, Administrator* v. *Calhoun,* 212 Ark. 17, 205 S. W. 2d 40, is more closely in point with the facts of the case we have here. There, on evidence very similar to the evidence in the case at bar, it was held to be a question of fact for the jury as to whether the operator of the car was acting in a willful and wanton manner, and we think the *McAllister* case is controlling. In that case, we quoted from *Splawn, Admx.* v. *Wright, supra*: ''Whether an automobile is being operated in such a manner as to amount to wanton and willful conduct in disregard of the rights of others must be determined by the facts and circumstances of each individual case.'' And, in *Steward, Administrator* v. *Thomas, supra,* we said: ''It is one thing to persistently pursue a course of driving in a reckless and dangerous manner over the protest of the occupants of the car and an entirely different thing to act in a negligent manner on the **spur of the moment.''**

Appellant further contends that the testimony of Officer Beech, a State Patrolman, expressing his opinion as to the speed at which the car was traveling at the time of the wreck, was inadmissible. He was asked if his investigation showed the speed of the vehicle just before the accident. The attorney for the defendant spoke up and said: ''Let him qualify the witness.''

The court said: ''The witness should be qualified, whether or not he examined the vehicle involved and he should state what other evidence he based his opinion on,

if he has any. First, do you have an opinion from your investigation as to the approximate speed of the vehicle at the time of the wreck?''

A. ''Yes, sir.''

The court: ''Tell the jury upon what you base that opinion?''

A. ''The opinion is based on the distance the vehicle traveled after it got out of control.''

The court: ''Proceed.''

Counsel for plaintiff then questioned the witness with reference to his opinion as to the speed the car was traveling and no further objection was made. Beech then testified that in his opinion the car was traveling about 95 miles an hour at the time of the mishap. In these circumstances, it cannot be said that there was any objection to the witness giving his opinion as to the speed of the car. If counsel for defendant was not satisfied as to the witness's qualifications and the basis on which he formed his opinion as to the speed, he should have made a further objection, as the court had apparently complied with counsel's request that the witness be qualified.

It is argued that there was error in the giving of several instructions and the failure to give others. We have carefully examined the instructions, and we find no error.

It is further contended that the verdict in the sum of $7,500.00 is excessive. Mrs. Chapman was seriously and painfully injured, her injuries consisting of a broken neck, six broken ribs, a leg broken in two places, and her knee was injured to such an extent that an operation may be required at a later date. Her back was burned, causing disfigurement; she suffered concussion, severe contusions and lacerations, and shock.

She was a waitress in a cafe at Forrest City, earning $21.00 a week and her meals, and tips which averaged about $10.00 a week. Her hospital bill was approxi-

mately $1,200.00, and her doctor bill about $600.00. She was injured on the 16th day of April, 1955; the case was tried on the 17th day of August, 1955, and there was evidence that she might not be able to go to work for another year. We cannot say that the verdict was excessive.

Finding no error, the judgment is affirmed.