BRIDGES *v.* STEPHENS.

5-3403                                   384 S. W. 2d 490

Opinion delivered December 14, 1964:

*Knox Kinney*, for appellant.

*Fletcher Long*, for appellee.

GEORGE ROSE SMITH, J. On April 7, 1963, Kathryn Stephens was killed while riding in a car that was owned and was apparently being driven by the defendant-appellant, Granville Bridges. Kathryn was twenty-one years old. Although she had never been married, she was survived by a four-year-old son. This action for wrongful death was brought by the administrators of Kathryn's estate. The verdict and judgment awarded the administrators, in addition to the funeral expenses, the sum of $17,500 to compensate the child for the loss of his mother's care, support, and nurture.

Kathryn was a guest in the car. The appellant first contends that he was entitled to a directed verdict, on the ground that the plaintiffs failed to proved either that he

802

was driving the car when the accident occurred or that he was guilty or willful and wanton misconduct. Ark. Stat. Ann. §§ 75-913 and -915 (Repl. 1957).

Whether the appellant was driving the car was an issue of fact. The accident, a collision with another car, took place on Sunday evening at about seven o'clock. During the afternoon Kathryn had been riding around with the appellant and Herbert Lee, who was also killed. The appellant testified that he went to sleep in the back seat while the car was temporarily parked at about 5:30 and that he remembered nothing until he awoke in a hospital the next day. There was proof, however, that a man was driving the car when the collision occurred and that Herbert Lee, the other man in the vehivle, could not drive. Bridges admittedly owned the automobile and had been driving it earlier in the afternoon. It was for the jury to decide who was driving at the time of the accident.

The issue of willful and wanton misconduct was also a question of fact. Just before the collision the Bridges car was traveling north at 30 or 35 miles an hour on a county road that was crossed by U.S. Highway 70. A stop sign required Bridges to stop before entering the highway, but he ignored the sign and attempted to drive across the highway without stopping. Another automobile coming down the highway at great speed struck Bridges' car and caused the death of both his companions.

There was substantial evidence to show that Bridges had been drinking beer during the afternoon and was intoxicated when the collision occurred. We adhere to the view unanimously expressed in *Cooper* v. *Calico,* 214 Ark. 853, 218 S.W. 2d 723, that one who drives under the influence of intoxicants may be found to be chargeable with willful and wanton misconduct. In the *Cooper* case a majority of the court did not think there was sufficient proof of the driver's intoxication, but that is not the situation in the case at bar. We think it goes without saying that one who drives a car while he is drunk may fairly be

held to be engaging in misconduct—criminal misconduct —that is both willful and wanton. (In the case at hand it is not contended that Kathryn Stephens assumed the risk of her host's drunken driving.)

We find no error in the trial court's refusal to give a requested instruction which included a statement that willful misconduct means something more than gross negligence. In other instructions the court had read the guest statute to the jury and had given an acceptable definition of willful misconduct. There was no need for the court to refer also to "gross negligence." That phrase does not actually appear in our guest statute. Moreover, the requested instruction did not define gross negligence; so the jurors would have been left in doubt about the meaning of the court's language.

Counsel's final argument is that the $17,500 verdict for Kathryn's infant son is excessive. This contention is based in part upon the erroneous premise that the statutory reference to "pecuniary injuries" limits the measure of damages to the present value of the financial support that Kathryn would have provided for her child during his minority. Ark. Stat. Ann. § 27-909 (Repl. 1962). This interpretation of the statute is too narrow. The award may also include compensation for the loss of parental love, care, supervision, and training. *Mo. Pac. R.R.* v. *Creekmore,* 193 Ark. 722, 102 S.W. 2d 553; *Strahan* v. *Webb,* 231 Ark. 426, 330 S.W. 2d 291.

Soon after the birth of her son Kathryn, who was living with her parents, obtained employment and applied most of her earnings to the support of her son. Later on, it is true, she was committed for a time to the State Hospital as a result of drug addiction. Long before her death, however, she had been released and had returned to her parents' home. The jury could have found that during the remaining seventeen years of this fatherless child's minority he would be dependent upon his mother not only for financial support but also for all the loving care that a child ordinarily receives from both his parents. We cannot believe that an award of $17,500 for this

tragic loss demonstrates that the jurors were motivated by passion or prejudice.

Affirmed.